E-FILED
Friday, 10 July, 2026  11:20:22 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

MICHAEL CONTRERAS, *et al.*,
    Plaintiffs,

v.

RISINGER BROS. TRANSFER, INC.,
    Defendant.

Case No. 1:25-cv-01441

**Order**

Now before the Court is the Plaintiffs' Motion to Facilitate Notice Pursuant to Section 216(B) of the Fair Labor Standards Act ("FLSA") against the Defendant, Risinger Bros. Transfer, Inc. ("Risinger"). (D. 23).[1] For the reasons set forth below, the Plaintiffs' Motion is granted.

**I**

The Plaintiffs filed the pending Motion on April 20, 2026. After a response (D. 38), reply (D. 39), sur-reply (D. 42), a motion for reconsideration of the Court's order permitting a sur-reply (D. 44), a response to the sur-reply (D. 46), and a plethora of motions for extensions of time and page-limit expansions (D. 25, 31, 34, 35), the Motion is beyond ripe for disposition.

**II**

The Plaintiffs, two drivers for Risinger, seek to facilitate notice to other similarly-situated drivers so that the Plaintiffs can convert this case into an FLSA collective action. In their complaint, the Plaintiffs allege that, effectively, Risinger misclassified the Plaintiffs as independent contractors rather than employees. In

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

turn, the Plaintiffs allege that their pay and wage deductions violated the minimum wage owed to them under the FLSA.

In the pending Motion, the Plaintiffs seek to facilitate notice to "all delivery drivers who worked for Risinger in the United States during the past three years and were classified as independent contractors." (D. 23 at ECF p. 10). Risinger, of course, opposes this effort, and argues that the Plaintiffs have failed to establish a similarly-situated class, and that the Plaintiffs' proposed notice is defective.

## III

The Court will first determine whether the Plaintiffs have established that their proposed collective class is similarly situated. Then, the Court will assess the Plaintiffs' proposed notice.

## A

The FLSA "permits employees to bring so-called collective actions to sue employers for violations of the FLSA on behalf of themselves and other similarly situated employees." *Richards v. Eli Lilly & Company*, 149 F.4th 901, 905 (7th Cir. 2025) (quoting 29 U.S.C. § 216(b)). Unlike Rule 23 class actions, collective actions are "a consolidation of individual cases, brought by individual plaintiffs", *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024), in which "each plaintiff who joins the collective enjoys full party status." *Richards*, 149 F.4th at 906 (citing 7B Wright & Miller's Federal Practice and Procedure § 1807 (3d ed. 2005)).

Under *Richards*, courts "may issue notice to potential plaintiffs [in FLSA collective actions] when the named plaintiffs have raised at least a material factual dispute as to the similarity of potential plaintiffs." 149 F.4th at 905. To facilitate a collective action, "federal district courts may issue notice of a pending collective action to 'potential plaintiffs' so that they may make 'informed decisions about whether to participate.'" *Id.* at 906 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)). In *Richards*, the Seventh Circuit clarified the standard by

which collective-action plaintiffs can demonstrate that the proposed collective class is similarly situated. "[T]o secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Id*. More specifically, "a plaintiff must produce some evidence that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id*. If the court is satisfied by the plaintiff's showing, it then "may proceed with a two-step approach—that is, it may issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for certification after opt-in and discovery are complete."

Here, the Plaintiffs offer declarations from Plaintiff-Contreras, Angel Rodriguez, Anthony Cooper, and Lacy Raynor, as well as accompanying pay stubs. With that support, the Plaintiffs argue that they have raised a triable fact that both the Plaintiffs and other Risinger drivers are subject to the same "uniform practice of classifying delivery drivers as independent contractors and making deductions from their pay." (D. 23 at ECF p. 6). As a result, the Plaintiffs aver that other misclassified Risinger drivers are similarly situated.

In response, Risinger argues that the affidavits are conclusory; they do not explain the policies to which the drivers are ostensibly subject, Risinger's instructions, or other details about their experience with Risinger. Further, Risinger argues that many of the policies the Plaintiffs accuse Risinger of instituting are the product of federal law (*e.g.*, drug tests and displaying Risinger's name and DOT identification number on the trucks). Consequently, Risinger concludes that the Plaintiffs have failed to raise a triable fact as to whether Risinger's other drivers are "similarly situated" under *Richards*.

The Court finds that the Plaintiffs have carried their modest evidentiary burden at this early stage. Critically, under *Richards*, a plaintiff does not have to

prove his case, foreclose disputes, or satisfy an exceedingly high burden; instead, a plaintiff must produce "*some evidence*" that he and potential collective class members are similarly situated. *See* 149 F.4th at 906 (declaring that "a plaintiff must produce some evidence that they and the members of the proposed collective are victims of a common unlawful employment practice or policy"). Here, Plaintiff-Contreras and the three other declarants state that they were "required to sign a form independent contractor agreement with Risinger", were paid at a fixed rate that they "could not negotiate", "could only make deliveries for Risinger", were required to "take instructions" about "where and when to pick up and drop off … loads", and "work[ed] 65 to 70 hours a week." (D. 23-3, 23-4, 23-5, 23-6). Moreover, Risinger made "deductions" from the declarants' pay to subject them to "below minimum wage" pay. *Id*. The Plaintiffs, for each declarant, also provide pay stubs to evidence those wage deductions.

Under *Richards* and in its wake, this evidence—sworn declarations coupled with pay stubs—has consistently been held to constitute "some evidence" that plaintiffs and their collective classes are similarly situated. *See Richards*, 149 F.4th at 913 ("acknowledge[ing] that, at this stage, the relevant evidence will likely come in the form of affidavits and counter-affidavits, including those that a plaintiff may wish to submit after seeing a defendant's rebuttal evidence. That's fine; courts routinely assess whether competing affidavits create a material factual dispute."); *see also Day v. Menke Inc.*, No. 24-CV-3222, 2026 WL 1481926, at *5 (C.D. Ill. May 27, 2026) (finding that the plaintiff met "the 'threshold showing' that *Richards* requires" because "[t]he declarations provided by Day and Brown along with their paychecks constitute some evidence that they and others are victims of a common unlawful employment practice or policy"); *Bowie v. Gifted Touch, LLC*, No. 1:25-CV-00441-TWP-MKK, 2026 WL 81475, at *2 (S.D. Ind. Jan. 12, 2026) ("Plaintiffs have met the modest factual burden to show that they are similarly situated to the

potential opt-in plaintiffs identified in the collective definition. As shown by the affidavits and earnings records, Plaintiffs were employed by Gifted Touch as health home aids and paid at an hourly rate. They routinely worked more than 40 hours in a workweek and were not paid overtime premiums for such workweeks."); *Blakeney v. Arthur J. Gallagher & Co.*, No. 23 C 16624, 2026 WL 851178, at *3 (N.D. Ill. Mar. 27, 2026) ("Defendants also argue that notice is not appropriate because their supervisor declarations 'rebut' Plaintiffs' declarations. But the declarations produced by Defendant simply serve to establish a factual dispute regarding whether Plaintiffs and other potential class members were in fact discouraged from recording overtime. While this is primarily a merits issue, it is possible that some supervisors discouraged overtime while others did not, which might affect the size of the collective action or whether it is practical to maintain a collective action in this case at all. But it is likely impossible to discover whether differences in supervisor conduct affect whether a collective action can be certified without obtaining statements from additional potential class members.").

Risinger does present counter-evidence. For example, it argues that it classifies drivers into six different categories: Lease-Purchase Drivers, Owner-Operator Drivers, Team Drivers, Third-Party Carrier Drivers, One-Way Carrier Drivers, and Brokerage Carrier Drivers. Within these categories, relevant differences exist, including: whether the driver displays a DOT identification number, whether the drivers vehicle displays Risinger's logo, the negotiability of the driver's rate, the computation of deductions, the amount (or existence) of direct communication with Risinger, and other factors. Thus, it is improbable for the collective class to be similarly situated, argues Risinger, given the material differences between groups.

But Risinger's evidence fails to foreclose the material dispute that the Plaintiffs have raised. Critically, the Plaintiffs themselves limit the collective class

to drivers who: have signed an "independent contractor agreement", "operate[ ] under Risinger's logo and DOT number", "receive[ ] work assignments from a Risinger dispatcher", are "required to make deliveries within set time windows", and are "paid a set number of cents per mile". (D. 39 at ECF p. 11–13). Thus, to the extent that Risinger has categories of drivers that do not meet these criteria, they will not qualify for the collective class anyway. Moreover, through discovery, Risinger can certainly seek to narrow the class of proffered similarly-situated drivers to the drivers who are truly bound by uniform Risinger policies. Or, perhaps Risinger can later argue that certain drivers are subject to different measures of damages based on their specific deductions, hours worked, responsibilities, investment in equipment, control over their work schedule, or other factors. But such arguments are not a barrier to permitting collective class notice.

Risinger also objects that the Plaintiffs' declarations contain inadmissible hearsay and thus should not be considered. But "[g]iven that the Court need not consider the merits of the claims or engage in fact-sensitive inquiries [this notice inquiry], the Court will not require a strict application of the hearsay rule at this stage." *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *3 (N.D. Ill. Feb. 28, 2019) (internal citation omitted). Of course, once the Plaintiffs move for certification of their class, and/or once Risinger moves for summary judgment, it is likely that the Plaintiffs' evidentiary burden will be more onerous. But at this stage, the Court finds that even if the Plaintiffs' declarations ultimately contain hearsay, that is not enough to strike the evidence. This is especially true where Risinger will have the opportunity to request discovery and take depositions prior to any dispositive motion practice.

The remainder of Risinger's objections dispute, effectively, whether Risinger misclassified any of its drivers. But the dispute here is not the merits of

6

the Plaintiffs' case; the dispute is whether Risinger's ostensibly-illegal policies were uniform, such that other Risinger drivers are "similarly situated" to the Plaintiffs. Absent evidence that demonstrates disparate policies amongst the proffered collective class, rather than factual disputes about the merits of the case, Risinger's evidence fails to overcome the Plaintiffs' evidence. *See Gower v. Roundy's Supermarkets Inc.,* No. 24 C 9346, 2025 WL 3537391, at *5 (N.D. Ill. Dec. 10, 2025) ("Importantly, the declarations submitted by defendants do not dispute the propositions that all Produce Managers were subject to the same job description, were generally required to work at least fifty hours each week, were classified as exempt from the FLSA, and performed labor such as breaking down shipments, stocking shelves and customer service. Ultimately, the declarations provided by defendants show that there are disputes about material facts, but they do not conclusively establish that Produce Managers are not similarly situated. In sum, the Court concludes that Gower has made a threshold showing that there is a material factual dispute regarding the similarity of the members of her proposed collective."); c*f. Sims v. Am. Heritage Protective Servs., Inc.*, No. 24 CV 5620, 2025 WL 3240900, at *4 (N.D. Ill. Nov. 20, 2025) (denying motion for collective class notice because the defendant presented evidence that its policies "var[ied] substantially [and materially] across client sites", and because the defendant "presented unrebutted evidence of dissimilarity with respect to its [relevant] practices, which are central to the proposed collective's claims, there is no material factual dispute as to the proposed collective's similarity").

Thus, the Plaintiffs have, under *Richards*, established a material dispute as to whether other Risinger drivers were subject to the same, ostensibly-illegal

policies to which the Plaintiffs were subject. The Plaintiffs' Motion is thus granted on this score.[2]

## B

Next, the Court will assess the Plaintiffs' proposed notice. Risinger advances nine distinct objections to the language and form of the notice. The Court will address those objections in turn.

## 1

Risinger first objects that "the notice fails to disclose potentially adverse consequences of joining the lawsuit." (D. 38 at ECF p. 26). In that vein, Risinger argues that (1) most Risinger drivers earn more as independent contractors than they would as employees, and (2) Risinger would likely require all participating drivers to "disgorge all gross compensation earned as an independent contractor … in exchange for receiving … minimum wage". *Id*. In response, the Plaintiffs argue that such language would have a chilling effect on drivers who otherwise would seek to opt in.

Upon the court's review, in most cases that require the plaintiff to amend its proposed notice to disclose adverse consequences, the effect is to inform the collective class that discovery, depositions, and trial testimony may be needed. *See, e.g., Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 965 (S.D. Ind. 2016) (internal citations omitted) ("A class member could in fact be deposed or called as a witness at trial and be required to attend. Courts typically approve notices explaining that in addition to a potential monetary reward, opt-in plaintiffs face the possibility that they will be required to participate in discovery and testify at trial. Explaining that

---

[2] Risinger also argues that, if the Court believes that expedited discovery could serve to resolve the overarching factual dispute, the Court should order that limited discovery prior to permitting class notice. But Risinger's alleged misclassification of the Plaintiffs as independent contractors is simply too factual and involved of a question to resolve in this short-circuited fashion. The Court thus denies Risinger's request for expedited, pre-notice discovery.

a class member may be subject to these obligations allows them to make a fully informed decision of whether to join this suit. Defendants' objection is reasonable and including this information is appropriate."). In doing so, courts typically conclude that such language "advise[s] future plaintiffs of their responsibilities and consequences if they join, so long as the language doesn't unfairly dissuade potential plaintiffs from joining." *Hayes v. Thor Motor Coach, Inc.*, 502 F. Supp. 3d 1342, 1353 (N.D. Ind. 2020).

The Court's analysis, then, is whether Risinger's proposed modifications contains prudent advice, or whether they chill potential plaintiffs from opting in. Risinger's first objection—to include language that most Risinger drivers earn more as independent contractors than employees—is overruled. This suggestion is speculative, surely is factually disputed by the Plaintiffs, and certainly has a greater chilling effect than it does a prudent advisory effect. Such language is not necessary.

Risinger's second objection—to include language that Risinger "intends to enforce a contract provision under which … the driver agrees to disgorge all compensation earned as an independent contractor … in exchange for receiving the then-applicable minimum wage"—is also overruled. This is not helpful factual information, but rather speculates Risinger's future litigation strategy (and also invites speculation on whether that strategy would prove successful). The Court does not find this to be prudent information, but rather views it as an effort to chill participation of potential opt-in plaintiffs. The Court thus overrules Risinger's objection.

**2**

Next, Risinger seeks to strike the Plaintiffs' use of "court-authorized". The Plaintiffs use that phrase in the following three sentences, all of which appear in different portions of the proposed notice:

- **"COURT-AUTHORIZED NOTICE OF YOUR RIGHT TO 'OPT-IN' TO CLAIMS BROUGHT UNDER THE FLSA AGAINST RISINGER BROS TRANSFER, INC."**
- "**This is a court authorized notice.**"
- **"This notice has been authorized by the United States District Court for the Northern [sic] District of Illinois."**

(D. 23-1 at ECF p. 2–3). Contrary to Risinger's objection, the Court fails to see how the Plaintiffs' use of "court authorized" undermines judicial neutrality. The Court, in a vacuum, understands Risinger's concerns that an opt-in plaintiff may potentially view the Plaintiffs' claims as having been validated by the Court. But the notice clearly provides: "The case is at an early stage, and there has not been a decision by the court as to whether the Plaintiffs' position or Risinger's position is the correct one." (*Id.* at ECF p. 2). The Plaintiffs also offer to bold this language. This will remove any misconception that the Court has already decided the underlying claims in the Plaintiffs' favor.

Accordingly, the Court overrules Risinger's objection, but agrees that the relevant provision should be bolded as follows: ""The case is at an early stage, and **there has not been a decision by the court as to whether the Plaintiffs' position or Risinger's position is the correct one**." The Court also orders the Plaintiffs to amend "This notice has been authorized by the United States District Court for the Northern District of Illinois" to "This notice has been authorized by the United States District Court for the Central District of Illinois."

**3**

Risinger further objects that the above "neutrality disclaimer" is "bur[ied] … in the fourth paragraph of their notice". (D. 38 at ECF p. 26). The Court finds that, as it ordered *supra*, bolding the neutrality disclaimer will ease any concerns of confusion. This objection is therefore overruled.

**4**

Next, Risinger objects that the notice "omit[s] any mention of Risinger's defenses", such that "the allegations are uncontested facts and deceptively suggests recipients are automatically entitled to recovery." (D. 38 at ECF p. 26). The Court disagrees. The notice provides that the Plaintiffs "allege" FLSA violations, that "[t]he case is at an early stage", and "there has not been a decision by the court as to whether the Plaintiffs' position or Risinger's position is the correct one", that potential plaintiffs must opt in in order to "receive a share of any settlement or judgment that the Plaintiffs may obtain", and encourages opt-in plaintiffs to contact Plaintiffs' counsel with any questions. (D. 23-1 at ECF p. 2). Plainly, a reasonable reader would understand that the case has yet to be decided. Risinger's objection that the notice disingenuously paints the contents or procedural posture of the pending lawsuit is overruled.

**5**

Risinger also objects to the notice's statement that "not all individuals who submit a consent form" will have to produce discovery. This language, argues Risinger, "limit[s] Risinger's discovery rights." (D. 38 at ECF p. 27). But the notice does not conceal the possibility that the opt-in plaintiffs will be required to partake in discovery. It reads: "You may also be asked to be a witness or provide evidence in the case, although not all individuals who submit a consent form will be required to do so." (D. 23-1 at ECF p. 2). The Court finds that this language strikes the balance between (1) apprising opt-in plaintiffs of the possibility of discovery

and trial, while (2) not misrepresenting the likelihood (which is low) that every single opt-in plaintiff will be required to testify or be deposed. The Court therefore overrules Risinger's objection.

**6**

Next, Risinger objects that the "notice states the opt-in deadline *three separate times* in **bold** with increasing urgency." (D. 38 at ECF p. 27) (emphasis in original). The Court sees no issue with the notice making clear to the opt-in plaintiffs when the deadline expires. This objection is overruled.

**7**

Further, Risinger argues that "the notice fails to inform recipients of all their options, including the option to do nothing, speak to Risinger's counsel, consult with their own attorney, or that declining participation has no effect on their individual legal rights." *Id.*

As to the "option to do nothing", the Court concludes that option is implicitly covered by the fact that opt-in plaintiffs must—of course—affirmatively opt in. Moreover, "a notice does not need to include defense counsel's contact information as 'there is no basis in law or logic for this request.'" *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 992 (N.D. Ill. 2018) (quoting *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 436 (S.D. Ill. 2012)). Nor does the Court find that the notice should encourage opt-plaintiffs to consult with an attorney, because ordinarily, the collective class is represented by the Plaintiffs' counsel. This objection is also overruled.

**8**

Similarly to the seventh objection, Risinger argues that the notice should include information about Risinger's counsel. For the same reason and authority stated *supra*, this objection is overruled.

**9**

Lastly, Risinger objects that Plaintiffs' notice identifies Plaintiff Contreras, but lacks any mention of co-Plaintiff Willie McGee, who is "currently facing criminal charges in federal court for armed robbery and opening fire on law enforcement in a Hobby Lobby parking lot *while driving a truck he leased from Risinger.*" (D. 38 at ECF p. 27) (emphasis in original). In response, the Plaintiffs argue that "there is nothing improper about the statement in the Notice that Plaintiff Contreras started the case—in fact, the original Complaint in the case lists only Plaintiff Contreras." (D. 39 at ECF p. 16).

While the Court agrees that the notice's omission of Plaintiff Mcgee is perhaps odd, the Court identifies no material impact from the omission. Whether or not Mr. McGee is identified on the notice, the case will not proceed any differently, the merits of the Plaintiffs' claims will not be assessed any differently, and any potential damages to the collective class will not be allocated any differently. Further, Plaintiff McGee still clearly appears on the public docket. Consequently, the Court identifies no reason or authority to require the notice to include Mr. McGee's name.

**C**

In addition to the form of the notice, Risinger advances three substantive objections: (1) that the Plaintiffs' proposed statute of limitations is improper, (2) that the Plaintiffs' proposed opt-in period is improper, and (3) that the Plaintiffs' request for a reminder notice is not appropriate.

**1**

"[T]he statute of limitations for FLSA violations is two years unless the violation was willful, in which case the limitations period is three years." *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1144 (7th Cir. 2001) (citing 29 U.S.C. § 255(a)). The Plaintiffs' proposed notice identifies a three-year statute of limitations,

13

as the operative complaint alleges a willful violation of the FLSA. Risinger argues that, in a non-binding case from 2017,[3] the court held under similar facts that Risinger did not misclassify its drivers; thus, this Court should now decide that, as a matter of law, no set of facts could prove that Risinger acted willfully.

That argument is errant. The Court will not preemptively decide, on a motion to facilitate notice, that the Plaintiffs' allegations of willfulness fail as a matter of law. That conclusion would be wholly, procedurally improper, given that this is a merits issue and the parties have not yet even completed discovery (let alone filed motions for summary judgment or judgment on the pleadings). This objection is therefore overruled. *See Dyer v. Skogen's Foodliner, Inc.*, No. 25-CV-322-JDP, 2026 WL 381878, at *9 (W.D. Wis. Feb. 11, 2026) (internal citation omitted) ("First, Festival objects to sending notice to employees going back three years because a three-year statute of limitations applies only to willful violations, something that 'Plaintiffs have not shown.' That is more of an objection to scope of the collective rather than the content of the notice, but, either way, it is a merits issue, so it is premature to consider it now. Plaintiffs have alleged willful violations in their complaint, which is all they were required to do at this point. If Festival believes that plaintiffs cannot prove willfulness, Festival can move for summary judgment on that issue."); *see also Guenther v. Fort Wayne Dough Co., LLC*, No. 1:24-CV-285-HAB, 2026 WL 796742, at *10 (N.D. Ind. Mar. 19, 2026) (noting that "[t]he question of willfulness typically goes to a jury").

**2**

Risinger also objects to the 90-day opt-in period; it argues that 60 days is standard, and sufficient given that Plaintiffs have requested electronic notice. "District courts have broad discretion regarding the details of a notice sent to

---

[3] That case is styled *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876 (C.D. Ill. 2017).

14

potential opt-in plaintiffs, including the length of time for the opt-in period." *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 783–84 (C.D. Ill. 2015). As noted in *Woods*, "[c]ourts routinely approve a 90–day opt-in period, and the Defendant provides no good reasons not to do so here." *Id*. at 784 (collecting cases). Accordingly, Risinger's objection is overruled.

**3**

Lastly, Risinger seeks to remove the Plaintiffs' reminder notice. Specifically, the "Plaintiffs request that a reminder notice be sent 45 days prior to the close of the opt-in period." (D. 23 at ECF p. 10). Several orders in this Circuit have authorized reminder notices, given that they help "to inform potential class members of their rights." *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016); *see also Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 935 (N.D. Ill. 2022) (allowing one deadline reminder notice); *Boltinghouse v. Abbott Lab'ys, Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (same).

The Court agrees with the Plaintiffs that a single reminder notice, 45 days prior to the expiration of the opt-in period, is appropriate. Given that the notice provides in bold that the Court has not yet decided the case, and given that only one reminder notice will be provided, the Court does not fear that the reminder notice "could be reasonably construed as solicitation or 'judicial encouragement to join the lawsuit.'" *Dyer*, 2026 WL 381878, at *11 (quoting *Schroeder v. Humana Inc.*, No. 12–cv–137, 2012 WL 5931886, at *9 (E.D. Wis. Nov. 27, 2012)) (declining to authorize reminder notice given that "the court [already was] approving three different kinds of notice" and thus an additional reminder notice was not appropriate). Rather, it helps simply to ensure that all potential collective class members receive the notice. Accordingly, the requested reminder notice is permitted.

## V

For the reasons set forth above, the Plaintiffs' Motion to Facilitate Notice (D. 23) is granted. The Plaintiffs may issue their proposed notice in a manner consistent with this Order. The process shall unfold as follows:

- On or before August 10, 2026, Risinger shall produce the names, dates of employment, current or most recent work locations, last known addresses, last known personal email addresses, corporate email address, and last known cell phone numbers of any current or former driver (within the last three years) of Risinger who is or was classified as an independent contractor.

- On or before September 10, 2026, the Plaintiffs must issue the court-approved notice to the relevant, potential opt-in plaintiffs.

- The Plaintiffs, after issuing that notice, shall file a status report on the record indicating their notice efforts.

This matter is referred to the Magistrate Judge for further proceedings.

*It is so ordered.*

Entered on July 10, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

16